Alton J. Wightman, J.
The defendant was convicted of murder in the first degree in the Supreme Court of Ontario County, New York, on June 22, 1951 and thereafter sentenced to life imprisonment. No appeal was taken from the judgment of conviction and now, some 13% years later, he has commenced this coram nobis proceeding. He is challenging the voluntariness of a written confession and admissions used against him on the trial, and is also contending that he was denied an opportunity to see or speak to any member of his family or to an attorney; that he was not apprised of his right to counsel before making a statement and confession; that he was forced to make long trips outside the County of Ontario handcuffed to police officers and without counsel, in order to obtain identification of Mm and procure further evidence against him; that he was continually beaten and abused, intimidated and threatened by the police during questioning; that there was delay in his arraignment; that he was arraigned without counsel; that following his sentence the officers at the Elmira Eeception Center, Elmira, New York, denied him an opportunity to file a timely notice of appeal and to contact his court-assigned counsel; and that his court-assigned counsel failed to take an appeal in his behalf.
The hearing in this proceeding was held in two parts. The first part considered the voluntariness of the confession and admissions, concerning which the burden of proof was upon the People and upon which the court is required to make findings of fact and conclusions of law (Jackson v. Denno, 378 U. S. 368; People v. Huntley, 15 N Y 2d 72). The second *489 part considered the remaining allegations of the petition, the burden of proof being upon the defendant. The charges against the defendant resulted from the murder of Charles Lennox during the evening of December 5, 1950. The defendant was apprehended by Otis Smith, an officer of the Utica, New York Police Department on December 7, 1950 at about 6:30 p.m., at the Union Station in Utica, New York. He was handcuffed and taken to the police station, where he was asked routine questions: i.e., “booked”, and placed in a cell. Anthony Cecere, County Detective for Ontario County, arrived at the police station on December 7 at about 10:00 p.m. The defendant was brought in and seated across a desk from Detective Cecere and he was questioned concerning the murder. During this questioning the defendant became ill; a doctor was called and he was taken by ambulance to a hospital and then transferred to another hospital, where he was confined until the following day, December 8, 1950 at about 10:00 a.m., when he was discharged. He was then taken from the hospital by Detective Cecere and other officers to the State Police Barracks at Oneida, New York, where he was fingerprinted and photographed, and then taken to the State Police Headquarters at Canandaigua, New York, and from there to the District Attorney’s office at Canandaigua, New York, where they arrived at about 3:35 p.m. Detective Cecere was with the defendant substantially all this time and had conversations with him and questioned him. Some time before 4:00 p.m., a stenographer was called in, and between 4:00 p.m. and 5:58 p.m. on December 8, 1950 a question-and-answer statement consisting of 13 pages was taken and reduced to writing and signed and sworn to by the defendant, which statement or confession was received in evidence upon the trial and marked “People’s Exhibit 48”. Upon this hearing many witnesses were produced who saw and observed the defendant from the time he was arrested in Utica, New York, until after the confession, Exhibit 48, was completed, and testified concerning the treatment of the defendant during this time. The evidence establishes that there was no undue delay in arraignment and, in any event, such delay as did occur did not render the confession involuntary (People v. Everett, 10 N Y 2d 500; People v. Lane, 10 N Y 2d 347; People v. Scully, 4 N Y 2d 453). The evidence further establishes, beyond a reasonable doubt, that the defendant was not abused, beaten, intimidated, threatened or coerced in any manner; that he received fair and considerate treatment; that he co-operated with the police officers and willingly and voluntarily related the details con *490 cerning the murder, and willingly and voluntarily made, signed and swore to the confession, Exhibit 48. Prior to making oral admissions which resulted in the making of the written confession, the defendant made no request to see or talk with an attorney or any member of his family, and he was advised of his privilege to remain silent. The confession, Exhibit 48, with the inculpatory statements contained therein, made prior to defendant’s arraignment or indictment, was properly admitted in evidence (People v. Gunner, 15 N Y 2d 226).
After the confession was signed, and on December 8, 1950, the defendant was taken to the home of Warren Smithem, a Justice of the Peace of the Town of Hopewell, where an information was signed and the defendant was arraigned on the charge of murder in the first degree.
The real problem in this case concerns the admissibility of photographs, Exhibits 33 through 46, and the testimony of Detective Cecere of admissions made by the defendant concerning the subject matter of the photographs. After defendant was arraigned, Detective Cecere, accompanied by other officers, ‘1 to determine the truth ’ ’ of the items contained in the written confession, on December 9 and 11, 1950 and January 5, 1951, took the defendant to various places mentioned in the written confession. There the defendant was asked to make certain identifications. Photographs, Exhibit 33 through Exhibit 46, were taken of the defendant demonstrating such identifications. The defendant argues that this postarraignment evidence, in the light of several court decisions handed down since the trial in this case, was not admissible as a matter of law (People v. Meyer, 11 N Y 2d 162; People v. Waterman, 9 N Y 2d 561; People v. DiBiasi, 7 N Y 2d 544; People v. Santmyer, 20 A D 2d 960 [4th Dept.]).
In this case, however, the defendant could have objected to the receipt of such testimony and of the photographs and could thereby have fully protected his rights. No objections were made to the testimony of Detective Cecere, and as each photograph was offered in evidence defendant specifically stated that he had no objection to the photographs being received in evidence. Under such circumstances the question could not be raised by coram nobis (People v. Howard, 12 N Y 2d 65). In that case the Court of Appeals reviewed the principles governing the use of coram nobis and it held cor am nobis to be an emergency measure to afford a defendant a remedy when no other avenue of relief is or ever was available to him. It could not be used to vacate a judgment where there existed a right of review on appeal. At pages 68-69 the court said:
*491 “ Orderly procedure required the defendant to object to the statement’s use and, if the ruling were used against him, to test its correctness by appeal. It would introduce confusion in the administration of justice if defenses or objections which might have been made and reviewed on appeal could be reserved as grounds for collateral attack upon the judgment of conviction years after it was rendered. In other words, and we come back to our point of beginning, neither coram nobis nor any other post-conviction remedy may be employed to perform the office of an appeal.
“ Nor may the circumstance that the trial antedated People v. Di Biasi (7 N Y 2d 544, supra) and People v. Waterman (9 N Y 2d 561, supra) be relied upon to effect an enlargement of the scope of coram nobis. If our decision in Di Biasi or Waterman be regarded as declaring ‘ new ’ law, it may not be applied retroactively to a case where the normal appellate process was either not invoked at all or was exhausted before the new rule was announced. (See People v. Muller, 11 N Y 2d 154, 156; see, also, People v. Friola, 11 N Y 2d 157, as to the necessity of objection.) ”
The problem with which we are now concerned is the effect of People v. Huntley (15 N Y 2d 72, supra) upon People v. Howard (12 N Y 2d 65, supra) as related to the facts in the case before us. Earlier in this decision the confession, Exhibit 48, was held to be voluntary and admissible in evidence. How, then, is the admissibility of the postarraignment admissions and exhibits affected, having been received in evidence “ to determine the truth ” of the facts contained in the written confession? Although such postarraignment evidence is in the nature of testimonial compulsion and would not be admissible (People v. Meyer, 11 N Y 2d 162, supra, and other cases cited), defendant nevertheless, not only did not object, but categorically stated he had no objection, to the admission of such evidence. All these admissions were made before arraignment and incorporated in the confession, Exhibit 48. The postarraignment admissions and photographs were merely confirmation, in different form, of such prearraignment voluntary admissions. It is the opinion of this court that the court in People v. Huntley (supra) did not overrule People v. Howard (supra) as applied to these facts and circumstances, and as was said in People v. Howard (p. 68) “ Orderly procedure required the defendant to object to the statement’s use and, if the ruling were against him, to test its correctness by appeal ” and the question may not be raised in coram nobis.
*492 Under the circumstances in this case, the overwhelming evidence of defendant’s guilt, the obvious willingness of defendant that all of the facts bearing upon the crime with all of its wantonnessj gruesomeness and horror, be received in evidence for its favorable bearing upon his defense of insanity and his single avowed purpose upon the trial to save his life, in which he succeeded, requires that defendant’s application for a writ of error coram nobis concerning the voluntariness of any and all confessions and admissions heard as part one in this proceeding be denied on the law and the facts.
Part two of this hearing concerns the remaining allegations of defendant’s petition, of which he has the burden of proof. Upon the hearing, the defendant withdrew and eliminated all of the allegations of his petition concerning this part of the proceeding except his claim for coram nobis relief, because of the failure of his attorney to appeal from the conviction and sentence, and the only evidence offered by the defendant was upon this issue. The counsel assigned to and who defended defendant upon the trial was Maurice Ohacchia of Geneva, New York. At that time he had practised law some 21 years. Since becoming engaged in the practice of law to the date of this hearing, he had been engaged on one side or the other of every homicide trial— of which there were many — occurring in that county, except one, wherein he was disqualified. Following defendant’s conviction, the question of an appeal was not discussed. All that defendant, his parents and his experienced attorney hoped to do was to save his life, and this was accomplished. An appeal would have again placed his life in jeopardy. The subject first arose when defendant wrote a letter to Attorney Ohacchia on January 7, 1954 suggesting an appeal. Attorney Ohacchia was called and testified for the defendant upon this hearing. The following is an extract taken from his testimony: “ A. I believe my opinion was pretty well expressed in one of my letters addressed to him, that, as I had told him throughout the trial, all I hoped to do for him was save his life. My whole theory of his trial was based not upon contending that there was any dispute as to the facts that were not disputable but as to his mental responsibility, and, of course, that was something that apparently had impressed this jury. It might not have impressed another jury, and we were very fortunate, as I expressed in that letter, that this jury did recommend life imprisonment and he was so sentenced.”
The failure of counsel to take an appeal where the sentence was not of death was not a denial of due process or violation of defendant’s constitutional rights and not reviewable, and coram *493 nobis is not the proper remedy (People v. Buck, 6 A D 2d 528; People v. Marchese, 19 A D 2d 728, affd. 14 N Y 2d 695; People v. Kling, 14 N Y 2d 571; People v. Tomaselli, 7 N Y 2d 350).
Defendant’s application for a writ of error coram nobis on all of the grounds alleged in his petition is hereby denied on the law and the facts.